AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. |
| T-Mobile, (216) 618-8452<br>4 Sylvan Way<br>Parsippany, NJ 07054 | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____ District of _____New Jersey_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 USC § 922(a)(1)(A) | Engaging in the Business of Dealing in Firearms Without a License |
| Title 18 USC § 922(a)(5) | Transfer of Firearm(s) to an Out-of-State Resident |
| Title 18 USC § 922(a)(6) | False Statement Related to Purchase of a Firearm |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

**Special Agent Janna Penfield**
*Printed name and title*

Sworn to before me and ~~signed in my presence.~~ ATTESTED TO BY LACETIME @ FRCrP 4.1

Norah McCann King
United States Magistrate Judge
*Judge's signature*

Date: 4/1/2022

City and state: Columbus, Ohio

**Magistrate Judge Norah McCann King**
*Printed name and title*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AUTHORIZATION TO OBTAIN LOCATION DATA CONCERNING CELLULAR TELEPHONE ASSIGNED CALL NUMBER (216) 618-8452 | **UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF AN**
**APPLICATION FOR A SEARCH WARRANT**

I, Janna Penfield, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, being duly sworn, deposes and states:

## INTRODUCTION

1.      I submit this Affidavit in support of an Application for a warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. 2703(c)(1)(A), authorizing agents of the ATF to ascertain the physical location of the cellular telephone, assigned call number **(216) 618-8452**, utilized by Martino Dante LORENZI (hereafter referred to as the TARGET CELLPHONE), with services provided by T-Mobile, including but not limited to E-911 Phase II data (or other precise location information) concerning the TARGET CELLPHONE (the "Requested Information"), for a period of thirty (30) days. The Affiant is also seeking historical subscriber, toll and tower information for the TARGET CELLPHONE covering the entire investigative period. The TARGET CELLPHONE is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B. Your Affiant is aware that T-Mobile is a telecommunications business located at 4 Sylvan Way, Parsippany, New Jersey 07054.

2.      Because this warrant seeks the prospective collection of information, including cell-site location information, which may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the

1

requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121–3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. Your Affiant is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been beginning in August 2018. Prior to becoming a Special Agent with ATF, I was a United States Probation Officer with the United States Probation Department through the Southern District of Ohio from October 2014 through January 2018. Additionally, from August 2007 through October 2014, I was a Parole Officer through the State of Ohio, which included a special assignment position with the United States Marshal Service as a Task Force Officer on the Southern Ohio Fugitive Apprehension Strike Team. I have completed the Federal Criminal Investigator Training Program and the ATF Special Agent Basic Training at the Federal Law Enforcement Training Center in Glynco, Georgia. I have also completed the Initial Pretrial and Probation Training Program at the Federal Law Enforcement Training Center in Charleston, South Carolina, and the State of Ohio Parole Academy in Columbus, Ohio. In addition to the firearms, arson, and explosives related training received in these courses, I have also conducted and participated in investigations involving firearms and narcotics. Further, I have conducted investigations utilizing cellular telephone data, including but not limited to precision locates, cell-site activation information as well as reviewing call detail information.

4. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation, from discussions with other agents of the ATF and other law enforcement agencies, and from my review of records and reports relating to the investigation. Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the information was provided by another special

2

agent, law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. Since this Affidavit is being submitted for the limited purpose of securing an order authorizing the acquisition of the Requested Information, I have not included details of every aspect of the investigation. Based on the facts set forth in this Affidavit, there is probable cause to believe that Brian CUNNINGHAM, Mariah CUTLIP, Walter RATHBURN (W. RATHBURN), Tyson RATHBURN (T. RATHBURN), Martino D. LORENZI, and others, have committed violations of the following federal laws: 18 U.S.C. § 922(a)(6), that is, knowingly making any false or fictitious oral or written statement to a firearms dealer with respect to any fact material to the lawfulness of the acquisition or disposition of firearms and ammunition; 18 U.S.C. § 922(a)(5), that is, transferring a firearm to an out-of-state resident; 18 U.S.C. § 922(a)(1)(A), that is, engaging in the business of dealing in firearms without a license; 18 U.S.C. § 2, that is, aiding, abetting, counseling, commanding, or soliciting a criminal act; as well 18 U.S.C. § 371, that is, two or more persons conspiring to commit any offense against the United States. (All of the above offenses are collectively referred to throughout as the TARGET OFFENSES.) There is also probable cause to believe that the location information sought for the TARGET CELLPHONE described in Attachment B will constitute evidence of these criminal violations, will lead to the identification of individuals who are engaged in the commission of these offenses, and assist law enforcement in locating LORENZI and others for the purposes of furthering the investigation.

5.     This court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.

6.     For the reasons set out in this Affidavit, there is probable cause to believe that the TARGET OFFENSES have been committed, are being committed, and will continue to be

committed by CUNNINGHAM, T. RATHBURN, CUTLIP, W. CUTLIP, LORENZI, and others unknown (collectively, the TARGET SUBJECTS). Further, there is probable cause to believe LORENZI is using the TARGET CELLPHONE to commit the TARGET OFFENSES.

## FACTS ESTABLISHING PROABLE CAUSE

7.      In approximately mid-December 2021, CUNNINGHAM's large volume of firearm purchasing came to the attention of ATF and other law enforcement officials. By way of summary background, the investigation has indicated that CUNNINGHAM had, between approximately July of 2021 and January 5, 2022, purchased approximately 238 firearms.

8.      The investigation has indicated that CUNNINGHAM stores firearms at his residence. On or about January 5, 2022, CUNNINGHAM voluntarily sat down with Your Affiant and other law enforcement to discuss his high-volume acquisitions, specifically that his high-volume acquisitions were of repeated type, manufacturer, and model of firearms. Your Affiant is aware from training and experience that these types of high-volume purchases in a short period of time, where the guns are of a similar type, manufacturer, and model, is indicative of straw purchases and/or firearms trafficking. During this interview CUNNINGHAM described himself as a firearm collector. He explained he was investing in firearms as a retirement investment and only periodically resold firearms from his "private collection" that he was no longer interested in. During this conversation CUNNINGHAM indicated that he stores his "private collection" in a large safe inside his garage located at his residence. Law enforcement explained to CUNNINGHAM that if he decides to make a profit selling his firearms in the future that he would need to apply for a Federal Firearms License (FFL). Following the interview, CUNNINGHAM forwarded law enforcement numerous photographs, which he indicated were from inside his house, depicting various firearms located in safes.

4

9.     Between the dates of on or about March 4 through on or about March 11, 2022, CUNNINGHAM purchased approximately sixty-five (65) firearms from the same FFL located in the Southern District of Ohio. Those firearms were purchased across three (3) different transactions. The purchases accounted for: ten (10) Taurus-manufactured, G3C model, 9mm caliber, semi-automatic handguns; twenty-four (24) SCCY Industries, model CPX-2, semi-automatic handguns; twenty-three (23) Glock-manufactured, semi-automatic handguns in various models and calibers; and eight (8) Smith and Wesson-manufactured, M&P 9 model, 9mm caliber, semi-automatic handguns. Again, through training and experience, Your Affiant is aware that an individual who engages in repetitive acquisition of similar firearms is an indicator of someone acquiring the firearms for resale.

10.     On or about March 16, 2022, CUTLIP entered an FFL located in the Southern District of Ohio and purchased a total of sixty-seven (67) firearms between two transactions. One transaction accounted for six (6) Taurus-manufactured, model G3C, 9mm, semi-automatic, handguns. The second transaction accounted for a total of sixty-one (61) firearms. Of those sixty-one (61) firearms, nineteen (19) were Taurus-manufactured, model G3C, 9mm, semi-automatic handguns; forty (40) were SCCY Industries-manufactured, model CPX-2, 9mm, semi-automatic handguns; and two (2) were Ruger-manufactured, model 57, 57 caliber, semi-automatic handguns. Your affiant knows through training and experience that these firearms are not a firearm model typically collected, given that they are viewed as items that are not hard to acquire. Through further investigation, investigators learned that CUTLIP transferred the firearms from her possession within hours of the purchase to T. RATHBURN.

11.     On or about March 21, 2022, investigators spoke with the owner of the FFL where CUTLIP completed her transaction. During the conversation with that FFL, investigators learned

5

that CUTLIP's order for the sixty-seven (67) firearms was placed by another individual further identified as Brian CUNNINGHAM. CUNNINGHAM contacted the FFL to place the order for the firearms, provided CUTLIP's full name and address, and acted as a middleman between CUTLIP and the FFL. The FFL stated that once the order was complete, he/she notified CUNNINGHAM that the order was ready for pick-up, and soon thereafter CUTLIP came to the location to complete the purchase. The FFL stated that CUTLIP's transaction was approximately $9,030.00 and was paid entirely in cash provided by CUTLIP.

12. Continuing on or about March 21, 2022, investigators again spoke with the owner of the FFL and learned that CUNNINGHAM had placed an order approximately two weeks prior through another individual later identified as W. RATHBURN. The FFL stated he/she received a text message from CUNNINGHAM with a picture of handwritten notes that contained the firearm order with the name "Walter" written on it. Investigators located records that indicate W. RATHBURN had purchased approximately fifty-two (52) firearms between three (3) separate transactions on or about March 11, 2022. Of those fifty-two (52) firearms: thirty-six (36) were SCCY Industries-manufactured, model CPX-2, 9mm caliber, semi-automatic handguns; and sixteen (16) were Glock-manufactured, semi-automatic handguns in various models and caliber. Investigators learned that W. RATHBURN's firearm transactions came to a combined approximate total of $13,270. Investigators learned that, on one of the occasions, CUNNINGHAM accompanied both W. RATHBURN and T. RATHBURN to the FFL; and, after departing from the FFL, most of the firearms were then transferred to CUNNINGHAM with T. RATHBURN retaining some.

13. Your Affiant is aware from training and experience that the above-described transactions bear strong indicators of illegal straw purchasers. By way of background, pursuant to

6

federal law and regulation, the FFL is required to obtain a completed ATF Form 4473 (the "Firearms Transaction Record") from the actual purchaser of a firearm before the FFL can transfer or sell a firearm to any unlicensed person. 18 U.S.C. § 923(g); 27 C.F.R. § 478.124. ATF Form 4473 gathers a host of information about the purchaser, including information to determine if the purchaser may lawfully possess a firearm. FFLs also may not transfer a firearm to an unlicensed person without first conducting a background check through the National Instant Check System (NICS) and recording the information on the ATF Form 4473. 18 U.S.C. § 922(t); 27 C.F.R. § 478.102. The NICS process is run by the Federal Bureau of Investigation (FBI) and provides the mechanism through which FFLs determine whether a particular purchaser is prohibited from possessing firearms. Providing false or misleading information to an FFL in connection with the acquisition of a firearm, e.g., lying on the ATF 4473, is violation of federal law. 18 U.S.C. § 922(a)(6). Additional information asked on the ATF 4473 includes the following question: *"Are you the actual transferee/buyer of the firearm(s) listed on this form and any continuation sheet(s) (ATF Form 5300.9A)?"* A bold warning is also provided with this question: *"You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you."* Marking yes to the above question, and then transferring the purchased firearms to the actual buyer, qualifies as an illegal straw purchase in violation of 18 U.S.C. § 922(a)(6).

14. In my training and experience, it is common for individuals who otherwise intend to divert the firearm(s) to criminal possession to use a straw purchaser to complete the retail transaction on their behalf or to acquire firearms from other unlicensed individuals. It is also common for straw purchasers to receive a benefit of some type, in this situation, a monetary benefit, to assume the risk of purchasing the firearm. More specifically a "straw" purchase is

described as the acquisition of a firearm(s) from a dealer by an individual (the "straw"), done for the purpose of concealing the identity of the true intended recipient or transferee of the firearm(s). Investigators learned that both CUTLIP and W. RATHBURN completed the ATF Form 4473 during their respective firearms purchases. During the continued investigation, investigators learned that CUNNINGHAM was seeking individuals who would pick up firearm orders for compensation of approximately $500.

15.     On or about March 22, 2022, investigators learned that a firearm originally purchased by W. RATHBURN on or about March 11, 2022, was recovered by law enforcement officials in Rochester, New York. The time-to-crime recovery for this firearm is ten (10) days. Your Affiant knows from training and experience that a 10-day time-to-crime is a short amount of time and is an indicator of firearms trafficking. Most individuals who purchase firearms retain them for extended periods up to years in length. Therefore, whenever a firearm is recovered in a criminal offense shortly after it was purchased, it is highly likely that the firearm was diverted to the criminal possession in some sort of firearm-trafficking scheme. Your Affiant also knows from training and experience that a shorter the time-to-crime period (that is, anything under a year) for the firearm recovery is an indicator that the original purchaser was in fact a straw purchaser who knowingly transferred the firearm to another individual after the purchase. Moreover, relevant here, Your Affiant is further aware from training and experience that, when firearms are recovered outside of the original purchase state with a such a short time-to-crime, it is an indicator of conduct violative of 18 U.S.C. § 922(a)(5) (transfer of firearm(s) to an out-of-state resident).

16.     On or about March 22, 2022, investigators executed a Federal search warrant at CUNNINGHAM's residence. During the execution of the search warrant investigators learned that additional documents and items of evidence had been thrown away in a nearby dumpster.

8

Investigators searched the dumpster and recovered two (2) receipt books that documented numerous firearms sales. One name observed in the receipt book was LORENZI and the second was "Apollo." The investigation has indicated that LORENZI is a resident of the Cleveland, Ohio area. Further related to LORENZI, REDMOND, and Apollo, the investigation has demonstrated that all three individuals have, on occasion, traveled from Northern Ohio to the Columbus area to obtain firearms from both T. RATHBURN and/or CUNNINGHAM as part of the illegal activities outlined in this Affidavit. To that end, investigators have identified that LORENZI, REDMOND, and Apollo have done so with regard to more than thirty (30) firearms, to include the firearms recovered in New York. In conjunction with the search of CUNNINGHAM'S residence, investigators also recovered three (3) additional receipts that documented firearm purchases by REDMOND between the dates of March 5–14, 2022. When CUNNINGHAM and T. RATHBURN conducted their sale of firearms with LORENZI and REDMOND, LORENZI and REDMOND displayed an Ohio driver's license.

17. The investigation has also led to the review of separate cellular conversations between T. RATHBURN and LORENZI, as well as T. RATHBURN and "Apollo," which provide further evidence of the arrangements and purchases of the firearms. The text messages indicate, for example, that LORENZI, and others, were placing orders with T. RATHBURN and others for the purchase of a number of the firearms at issue, and then arranging for the transfer of the firearms from T. RATHBURN to others associated with LORENZI. Both cellular telephone numbers utilized to communicate with T. RATHBURN were determined by investigators to be Voice Over IP (VOIP) and/or secondary text messaging applications and not originating from a cellular provider, all of which functioned to encrypt the communications. Your Affiant knows through training and experience that the use of secondary texting and VOIP telephone numbers is a method

9

often used to conceal identity and, depending on the circumstances, is a step taken to elude law enforcement detection. Despite the fact that the communications were encrypted and conducted in a manner that does not explicitly tie LORENZI to the TARGET CELLPHONE, the investigation has indeed been able to tie the TARGET CELLPHONE to LORENZI. Law enforcement came aware of a police report in Cleveland from in or around 2019 related to LORENZI. In the context of that report from 2019, LORENZI provided the TARGET CELLPHONE to law enforcement. Law enforcement then cross referenced the TARGET CELLPHONE through other available law enforcement databases, which further indicate that the TARGET CELLPHONE is tied to LORENZI.

18.     Moreover, the above-described text messages between T. RATHBURN and LORENZI indicate that LORENZI himself and others have traveled from Northern Ohio to the Southern District of Ohio to pick up firearms. The investigation has further indicated that LORENZI did so driving a dark blue Dodge Charger. Through further investigation, law enforcement has observed LORENZI driving a dark blue Dodge Charger in the Cleveland area, as recently as on or about March 31, 2022.

19.     Also relevant here, the investigation has indicated that additional firearms related to the allegations in this Affidavit have been recovered in the State of New York. In or around March of 2022, a total of two undercover purchases of firearms and a search warrant of a residence were conducted by law enforcement in the State of New York, which yielded the seizure of multiple firearms traced back to purchases made by W. RATHBURN, T. RATHBURN and/or CUTLIP.

20.     Investigators conducted a query of ATF databases, which returned negative results for CUNNINGHAM, CUTIP, W. RATHBURN, or T. RATHBURN having any current

affiliations related to ownership or licensing with other FFLs.

21.    Based on the allegations laid out in this Affidavit, the investigation indicates that LORENZI, REDMOND, and others, are working with CUNNINGHAM, T. RATHBURN, and others, to purchase firearms in the Southern District of Ohio; some of which firearms are then transmitted to LORENZI, REDMOND, and others; some of which firearms are then transferred out of the State of Ohio, namely, New York.

22.    Your Affiant knows based on training and experience that individuals who possess firearm and ammunition often possess other items commonly used or acquired in connection with the possession of firearms and ammunition.  Some of these items include, but are not limited to, other firearms, firearm parts, additional ammunition, firearm receipts, firearms brochures or owner's manuals, records of sale or acquisition of firearms, firearms magazines, and holsters.

23.    Your Affiant knows based on training and experience that individuals who possess the above-described items (i.e., firearms, ammunition, and other items commonly used or acquired in connection with the possession of firearms and ammunition) often store those items—including firearms and ammunition—in their homes or cars, so that the firearms and ammunition are easily accessible.  Your Affiant is also aware that firearms are durable and non-perishable goods, which can be expected to remain in the individual's possession for extended periods of time.

24.    Your Affiant knows based upon training and experience that individuals who possess the above-described items (i.e., firearms, ammunition, and other items commonly used or acquired in connection with the possession of firearms and ammunition) often store information regarding the above items (including information relating to the purchase of the items, as well as pictures of the items) on their personal electronic devices, including cellular telephones and computers.  Moreover, the investigation has indicated that the CUNNINGHAM used cellular

11

phone communications, including text messages, to communicate regarding the straw purchases articulated in this Affidavit.

25. Your Affiant submits, based upon the information set forth above, and upon training and experience, that the TARGET CELLPHONE, and the Requested Information sought, is likely to contain evidence that will aid in developing further evidence of the co-conspirators' firearm trafficking activities, including further establishing a pattern of CUNNINGHAM, CUTLIP, W. RATHBURN, T. RATHBURN, and others in their firearm trafficking activities.

26. Through the authorization of this Federal search warrant of the TARGET CELLPHONE, the data will continue to aid in the identification of others known and unknown that are involved in the illegal firearm trafficking, distribution as well as locations where the storage, distribution, and gatherings related to the actions of the illegal firearm trafficking and/or illegal possession and use of firearms is occurring.

27. Your Affiant knows through training and experience that individuals engaged in illegal firearms trafficking often have firearms for their personal protection and/or protection of the inventory and proceeds. Those individuals involved in the illegal trafficking of firearms contact law enforcement for assistance as a traditional victim(s) of crime and report crimes ranging but not limited to assault, theft, burglary, and often robbery associated with the activities of the illegal firearms trafficking.

28. Your Affiant knows through training, experience, and conversations with other law enforcement officers that individuals engaged in a conspiracy will use their telephone to communicate with each other. In addition, cellular telephones are commonly in the physical possession of owners which would yield information as to where the conspirators may be meeting, transferring the firearm(s), acquiring firearms for the purpose of diversion to the criminal market,

12

or other actions in furtherance of the conspiracy. The information sought in this warrant will further establish the patterns of those involved in the conspiracy.

## E-911 PHASE II DATA AND CELL SITE DATA

29.     In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector record. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., 120-degree face of the tower) to which the telephone is connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

30.     Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the TARGET CELLPHONE, by initiating a signal to determine the location of the TARGET CELLPHONE on T-Mobile's network or with such other reference points as may be reasonably available.

31.     Based on my training and experience, I know that T-Mobile can collect cell-site

13

data about the TARGET CELLPHONE. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

32.     E-911 Phase II data, also known as GPS data or latitude-longitude data, and cell-site data, also known as "tower/face information" or cell tower/sector record is most imperative in this investigation. Due to the difficulty in conducting surveillance operations on LORENZI, Your Affiant believes the GPS data and cell site data is vital to the investigation. The ability to locate LORENZI and possible associates while conducting the above-described criminal activity is crucial to obtaining evidence for prosecution and, eventually, executing a possible arrest.

## AUTHORIZATION REQUEST

33.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c), authorizing the acquisition of the information described in Attachment B for a period of thirty days.

34.     It is further requested, pursuant to 18 U.S.C. 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize notice to be delayed for a period of thirty days after the termination of the monitoring period authorized by the warrant. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the TARGET

14

CELLPHONE would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See id.*

35.    I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the TARGET CELLPHONE on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

36.    It is further requested that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the TARGET CELLPHONE outside of daytime hours.

37.    It is further requested that the warrant, the Courts Order, and this Affidavit be sealed until further order of the Court in order to avoid premature disclosure of the investigation and better ensure the safety of agents and others.

_(signature)_

Janna Penfield, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

and attested by facetime @ FRCom P 4. 1
Sworn to before me this 1st day of April, 2022

_(signature)_

Magistrate Judge Norah McCann King
United States District Court
Southern District of Ohio

_(signature)_

Norah McCann King
United States Magistrate Judge

## ATTACHMENT A

### The Property to Be Searched

1. The cellular telephone being used by the target Martino D. LORENZI (TARGET CELLPHONE), more particularly described as the cellular telephone assigned call number (216) 618-8452, with service provided by T-Mobile.

2. Records and information associated with the TARGET CELLPHONE, including information about the location of the TARGET CELLPHONE, as described in Attachment B, that is within the possession, custody and control of T-Mobile, a telecommunications business located at 4 Sylvan Way, Parsippany, New Jersey 07054.

17

## **ATTACHMENT B**

**I.**     **Information to be Disclosed by the Provider—Location**

All information about the location of the TARGET CELLPHONE described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the TARGET CELLPHONE" includes all available Pen Register/Trap and Trace (PRTT) data, E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile services, including by initiating a signal to determine the location of the TARGET CELLPHONE on T-Mobile's wireless network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. See 18 U.S.C. § 3103a(b)(2).

**II.    Records and Other Information to Be Disclosed—Additional Information**

In addition to the above, T-Mobile is further required to disclose the following records and other information, if available, to the United States for each account or identifier listed in Part I of this Attachment ("Account"), for the time period of 30 days from the authorization of this document.

A.    The following information about the customers or subscribers of the Account:

1.    Names (including subscriber names, user names, and screen names);

2.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

3.    Local and long distance telephone connection records;

4.    Length of service (including start date) and types of service utilized;

5.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"));

6.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

7.    Means and source of payment for such service (including any credit card or bank account number) and billing records.

B.    All records and other information (not including the contents of communications) relating to the Account, including:

1.    Information about each communication sent or received by the Account, including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers); and

2.    All data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from each cellular telephone or device assigned to the Account.

19

### III.     Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of the TARGET OFFENSES involving the TARGET SUBJECTS.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.